UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FELICIA T., <br><br>      Plaintiff, <br><br>   v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br>      Defendant. | Case No. 22 C 792 <br><br> Magistrate Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Felicia T.[1] seeks to reverse the final decision of the Acting Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, Plaintiff's request for reversal and remand [16] is granted, the Acting Commissioner's Motion [21] is denied, and the case is remanded to the agency for further proceedings.

**I. BACKGROUND**

On October 7, 2019, Felicia applied for DIB and SSI alleging she became disabled beginning on February 2, 2019 due to pain in joints, ankle to knee pain, neck pain, numbness and pain in her fingers and wrists, and high blood pressure. Felicia was born on February 14, 1959, making her 59 years old at the time of her alleged disability onset date. Felicia graduated from high school and completed some college. She has past relevant work as a landscaper, at a business she co-owned with her husband, from 2004 until February 2019. (R. 49). Within her role, she communicated with customers concerning estimates, ordered supplies, and completed the

---

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name or alternatively, by first name.

bookkeeping and accounting. *Id*. She also provided labor outside the office for the majority of the time once the business was set up, which included lifting over 50 pounds. *Id*.

Felicia's claims were initially denied on March 13, 2020, and upon reconsideration on August 9, 2020. (R. 23). On December 31, 2020, Felicia testified by telephone in front of Administrative Law Judge ("ALJ") Deborah Ellis. *Id*. At the hearing, the ALJ also heard testimony from a vocational expert ("VE"), Julie Dyer. *Id*. Following the administrative hearing, ALJ Ellis issued a decision on February 18, 2021, finding that Felicia was not disabled. *Id*. at 23-36. The opinion followed the required five-step evaluation process. 20 C.F.R. §§ 404.1520; 416.920.

At step one, the ALJ determined that Felicia had not engaged in substantial gainful activity since February 2, 2019, the alleged onset date. (R. 26). At step two, the ALJ found that Felicia had the following severe impairments: lupus and inflammatory arthritis/osteoarthritis. *Id*. At step three, the ALJ concluded that Felicia's impairments did not meet or medically equal a listed impairment. *Id*. at 29. At step four, the ALJ then determined that Felicia had the residual functional capacity ("RFC") to perform medium work as defined in 20 CFR §§ 404.1567(c); 416.967(c). *Id*. at 30. The ALJ concluded that Felicia could not perform any of her past relevant work, but other jobs existed in significant numbers in the national economy that she could perform, including hand packager, kitchen helper, and laundry worker. *Id*. at 34-35. As a result, the ALJ found Felicia not disabled. *Id*. at 35-36. On August 4, 2021, the Appeals Council denied Felicia's request for review, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 11-16; *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020).

## II. DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform her former occupation; and (5) whether the claimant is unable to perform any other available work in light of her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, --- U.S. ----, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly

articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Felicia argues that the ALJ's decision should be reversed and remanded for two reasons. First, she contends that the ALJ reached an unexplained and unsupported RFC assessment, in part because the ALJ should have obtained an updated opinion rather than evaluate mental health treatment records submitted after Felicia's hearing herself. Second, Felicia argues that the ALJ improperly discounted her subjective symptom allegations. The Court finds that remand is justified based on Felicia's argument that the ALJ should have obtained an updated opinion. Therefore, the Court does not address Felicia's remaining arguments.

To start, "[w]hile a claimant bears the burden of proving disability, the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000). In the end, the "case record must be complete and detailed enough to allow [the ALJ] to make a determination or decision about whether [the claimant is] disabled or blind." 20 C.F.R. §§ 404.1512(a)(2); 416.912(a)(2). Remand is warranted if the ALJ fails to fulfill her duty to adequately develop the record. *Smith v. Apfel*, 231 F.3d 433, 437-38 (7th Cir. 2000). Moreover, it is well established that the ALJ's independent duty to compile a complete record exists even when the claimant is represented by counsel. *Id*. at 437; 20 C.F.R. §§ 404.1512(b)(1); 416.912(b)(1); *Joseph Edward J. v. Comm'r of Soc. Sec.*, 2018 WL 4613206, at *6 (S.D. Ill. Sept. 26, 2018) (ALJ's independent duty to develop the record fully and fairly "is not eliminated where a claimant had counsel.").

As part of her challenge to the ALJ's mental RFC formulation, Felicia argues that the ALJ failed to obtain an updated opinion concerning her mental health treatment records. To prove the

4

ALJ erred in a way that caused prejudice, "the claimant must point to specific, relevant facts that the ALJ did not consider." *Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019); *Nelms*, 553 F.3d at 1098. Felicia did just that in her brief. As such, there are four reasons why the ALJ should have obtained an updated medical opinion: (1) the ALJ was aware the medical records were missing; (2) the ALJ's independent review of the new medical evidence resulted in errors and inconsistencies; (3) the ALJ cherry-picked and overstated evidence to support her RFC finding; and (4) the ALJ's reliance on the state agency psychological consultants' conclusions was hindered by the fact that the new records were unavailable to them at the time of their review.

First, the ALJ was responsible for developing the record and was aware that medical records were missing at the hearing. At Felicia's hearing on December 31, 2020, the ALJ initiated the hearing by pointing out that records from Con Learner and VNA were missing. (R. 45-47). Felicia's counsel agreed and noted that he had requested the records (albeit only three weeks before the hearing), and the records were pending with the physician's office. *Id*. As a result, the ALJ was aware that medical evidence was outstanding at the time of the hearing. However, instead of requesting an additional medical opinion after receipt of the supplemental medical records, the ALJ analyzed the records herself and issued her disability determination. In response, the Acting Commissioner argues that any error is due to Felicia's counsel because he should have requested an updated opinion, not the ALJ. On the contrary, the ALJ was required to "develop a full and fair record." *Nelms*, 553 F.3d at 1098. The regulations are clear that the ALJ was required to compile a complete record regardless of whether Felicia was represented by counsel. 20 C.F.R. §§ 404.1512(b)(1); 416.912(b)(1); *see also Sherry R. v. Saul*, 2021 WL 1884426, at *4 (S.D. Ind. May 11, 2021) ("Any presumption that a represented claimant made their best case before the ALJ does not overcome the ALJ's obligation to obtain medical expert interpretations of the record.").

5

The Acting Commissioner further relies on a letter from Felicia's counsel to the ALJ on January 22, 2021 to assert that Felica's "attorney specifically advised the ALJ that plaintiff had 'nothing further to submit,'" Doc. [21] at 9 (citing R. 302). However, the Acting Commissioner reads the letter from Felicia's counsel out of context. In reality, Felicia's counsel sent the letter to the ALJ to confirm that he had submitted the remaining 25 pages of psychiatric records and counseling notes from VNA Health Care dated October 19, 2020 to December 23, 2020. (R. 302). In doing so, Felicia's counsel ensured that the ALJ received the outstanding records nearly one month before the ALJ's hearing decision dated February 18, 2021. Thus, the ALJ knew the records were forthcoming at the hearing and received them prior to issuing her decision. By failing to obtain an updated medical opinion and choosing to evaluate the new records herself, the ALJ used an incomplete record to evaluate Felicia's claim. This, alone, is not fatal but as further described below, the ALJ made certain omissions and errors in reviewing that new information that resulted in a decision that is not supported by substantial evidence.

Second, the ALJ's own review of the VNA Health Care mental health records contains inaccurate statements and internal inconsistencies that result in an incomplete record. Courts have remanded ALJ decisions where the ALJ's analysis of the record contains inaccuracies. *See, e.g.*, *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (remanding in part because "the ALJ's recitation of the administrative record is misleading or inaccurate on several significant points"); *Juarez v. Astrue*, 2010 WL 1580200, at *10 (N.D. Ill. Apr. 19, 2010) ("the ALJ's decision contains some inaccurate statements"). Indeed, "an internally inconsistent opinion by an ALJ is likely to fail to build a logical bridge between the evidence and the result." *Lothridge v. Saul*, 984 F.3d 1227, 1234 (7th Cir. 2021); *see also David M. v. Saul*, 2021 WL 2645574, at *4 (N.D. Ill. June 28, 2021) (remanding where the court could not uphold the ALJ's mental RFC assessment because it lacked

analysis explaining why one doctor's opinion was relevant and another doctor's opinion was not).

Beginning with the substance of the additional medical evidence, Felicia treated with VNA Health Care from October 19, 2020 through December 23, 2020 for mental health issues. (R. 383-407). Felicia's treatment included seeing Licensed Social Worker ("LCSW") Shannon Lane and Dr. Bindu Gandhiraj, MO. *Id*. On October 19, 2020, Dr. Gandhiraj first saw Felicia for an initial psychiatric evaluation for depression and anxiety. *Id*. at 400-407. Dr. Gandhiraj described Felicia's current medication dosages as follows: 20 mg Celexa, which is used to treat depression,[2] 400 mg Gabapentin, which is used to relieve pain,[3] and 50 mg Trazodone, which is an antidepressant used to treat major depressive episodes.[4] *Id*. at 403. In addition, Dr. Gandhiraj reported a diagnosis of Axis I anxiety disorder and major depressive disorder, "recurrent severe without psychotic features." *Id*. Dr. Gandhiraj also assigned Felicia a GAF score of 50. *Id*. As part of the visit, Dr. Gandhiraj increased Felicia's Celexa dosage from 20 mg to 40 mg and recommended one-to-one therapy at VNA. *Id*. at 406.

On November 9 and December 7, 2020, Dr. Gandhiraj evaluated Felicia in two follow-up visits. (R. 385-99). Dr. Gandhiraj identified that while Felicia reported feeling better with her mood, her sleep was impaired when she ran out of Trazadone. *Id*. at 395. In addition, Dr. Gandhiraj assigned Felicia a GAF score of 65 on November 9th and 68 on December 7th. *Id*. at 388, 395. Dr. Gandhiraj also noted that Felicia's depression was in "full remission" and listed her anxiety disorder as active. *Id*. On December 23, 2020, Felicia participated in a telehealth video session

---

[2] *Johnson v. Colvin*, 2015 WL 5729980, at *2 n. 1 (N.D. Ind. Sept. 30, 2015) (citing Celexa Information from Drugs.com, http://www.drugs.com/celexa.html (last visited Sept. 19, 2015)).

[3] *Gleason v. Colvin*, 2015 WL 3454126, at *10 n. 14 (E.D. Wis. May 29, 2015) (citing http://www.drugs.com/gabapentin.html.)

[4] *Smith v. Colvin*, 2016 WL 3633314, at *1 n. 1 (N.D. Ill. July 7, 2016) (citing Dorland's Illustrated Medical Dictionary (32nd ed. Elsevier Saunders 2012).

with LCSW Lane. *Id*. at 383-84. Although the call was cut short after twenty minutes, Lane conveyed the following: "Client was irritable on the phone. Felt family was being demanding. Started processing family issues." *Id*. at 383.

In this case, the ALJ stated that Felicia "did not start psychiatric treatment until October of 2020 and she had improvement with medication management." (R. 27). The ALJ pointed out that Felicia was prescribed Trazodone and Celexa, understood and agreed to the treatment plan, and her depression was in full remission by December 7, 2020. *Id*. This was incorrect. Based on Dr. Gandhiraj's notes, Felicia was already taking Trazodone and Celexa before her first appointment. *Id*. at 401. The ALJ incorrectly analyzed Felicia's past medical history, including when she began taking certain medications and which doctor prescribed those medications. Similarly, in *Moss*, the Seventh Circuit remanded partly because the ALJ misrepresented the claimant's treatment history. 555 F.3d at 562. This inaccuracy gives the Court pause in relying on the ALJ's interpretation of the new medical evidence. Without an accurate, updated medical opinion, the Court cannot rely on the ALJ's description of Felicia's medical records.

Moreover, the ALJ's analysis of whether Felicia consistently took her prescription medication is internally inconsistent. For example, the ALJ pointed out that when Felicia ran out of Trazodone, likely because she did not get her prescription filled, she struggled with a sleeping impairment. (R. 27). The ALJ also noted that in September 2020, Felicia forgot to take her pain medication. *Id*. at 32. However, in analyzing the first functional area of understanding, remembering, or applying information, the ALJ determined that Felicia had only a mild limitation. *Id*. at 27. To support the mild limitation, the ALJ stated that Felicia does not need reminders to take her medication. *Id*. (citing R. 242). Ultimately, the ALJ ignored references in her own opinion where Felicia did not consistently take her medication, either because she forgot to get it filled or

forgot to take it. While it is not the Court's role to displace the ALJ's judgment by making our own findings about the facts, we cannot uphold an administrative determination that failed to explain the outcome adequately. *Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010).

Third, the ALJ cherry-picked and omitted evidence favorable to Felicia's claim. The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014); *see also Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999) ("An ALJ may not ignore an entire line of evidence that is contrary to her findings."). Indeed, the ALJ must "engage sufficiently" with the medical evidence, *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016), and "cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding," *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

Here, the ALJ relied on the VNA Healthcare records that indicated Felicia's depression was in full remission but simultaneously omitted to mention Felicia's ongoing anxiety diagnosis. (R. 27) (citing R. 388, 395). Specifically, Dr. Langgut indicated diagnostic considerations of generalized anxiety disorder, Felicia reported symptoms to Dr. Gandhiraj, and Felicia testified that she had anxiety being in crowds and has panic attacks. *Id*. at 30-33 (citing R, 55-56, 342-43, 383-407). Likewise, the ALJ summed up Felicia's phone session with LCSW Lane in one sentence: "On December 23, 2020, the claimant had a phone session Shannon Lane L.C.S.W. that was cut off after twenty minutes." *Id*. (citing R. 383). The ALJ left out any mention of Felicia feeling irritable during the video session due to demands from her family. *Id*. at 383. Notably, the ALJ did not mention Felicia's anxiety and irritability when discussing her mental RFC limitations. As

9

the Court reads the ALJ's decision, the ALJ overstated evidence of Felicia's depression being in full remission and omitted her anxiety diagnosis to support her RFC. Thus, the ALJ did not adequately consider whether Felicia's depression and anxiety would have had a continued impact on her ability to perform medium work.

Going further, the ALJ omitted evidence of Felicia's GAF scores, which is evidence favorable to Felicia's claim. Felicia's GAF scores assigned during her three visits with Dr. Gandhiraj indicate that her mental functioning might be more limited than the ALJ identified. But the ALJ failed to include any discussion of Felicia's GAF scores. The GAF is "a scale of 1 to 100 used by mental health clinicians and physicians to help determine how well a person is doing in adjusting to the psychological and other challenges of living; the higher the score, the better he's doing." *Price v. Colvin*, 794 F.3d 836, 839 (7th Cir. 2015).[5] A GAF score of 41 to 50 reflects serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). *Blankenship v. Comm'r of Soc. Sec.*, 2022 WL 17495240, at *4 n.3 (N.D. Ind. Dec. 7, 2022).

Here, Felicia's records include three scores: 50 (October 19, 2020), 65 (November 9, 2020), and 68 (December 7, 2020). (R. 388, 395, 403). Felicia's first score of 50 indicates serious symptoms. *Blankenship*, 2022 WL 17495240 at *4 n.3. Of particular concern to this Court is that the ALJ ignored this evidence. *See, e.g., Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009) ("the ALJ may not simply ignore evidence"). Without explanation by the ALJ, the Court cannot see how Felicia's GAF scores during her assessments with Dr. Gandhiraj are consistent with the state agency's conclusions. *See Yurt v. Colvin*, 758 F.3d 850, 859-60 (7th Cir. 2014) ("the problem here

---

[5] Although the GAF has been criticized for subjectivity and is no longer widely used by psychiatrists and psychologists, *id.*, the Social Security Administration "still considers these scores as relevant, medical-opinion evidence." *Knapp v. Berryhill*, 741 F. App'x 324, 329 (7th Cir. 2018).

is not the failure to individually weigh the low GAF scores but a larger general tendency to ignore or discount evidence favorable to [plaintiff's] claim, which included GAF scores from multiple physicians suggesting a far lower level of functioning"). As such, the Court cannot conclude that the ALJ would have reached the same result if the ALJ had considered Felicia's GAF scores.

Fourth, the state agency psychological consultants' review of medical evidence was limited because the new mental health records were unavailable during their review. The Seventh Circuit has criticized ALJ's opinions and remanded where the state agency consultants' analysis was based on an incomplete record. *See, e.g.*, *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (reversing and remanding where the state agency consultants did not have the benefit of reviewing mental health treatment records that did not exist at the time); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (criticizing ALJ's reliance on non-examining consulting physicians' conclusions that were based on an incomplete medical record). District courts have similarly required an updated opinion where there is significant new medical evidence regarding a plaintiff's mental impairments. *See, e.g.*, *Sherry R.*, 2021 WL 1884426, at *5 (remanding to allow the ALJ to summon an expert opinion because "the bulk of Plaintiff's mental health records were not available for the state agency psychologists"); *Smith-Stevens v. Saul*, 2020 WL 4282757, at *3 (N.D. Ind. July 27, 2020) (requiring updated opinion where new evidence nearly one year after the agency's report indicated "significant functional impairment").

Instead of fulfilling her affirmative duty to develop Felicia's medical history, the ALJ summarized Felicia's VNA Health Care records to find the state agency psychological consultants' determinations persuasive—that Felicia's mental impairments were non-severe. (R. 27, 33). The ALJ asserted that the objective hearing level evidence supported the state agency's findings. *Id*. at 33 (citing R. 332-44, 383-407). The state agency psychological consultants concluded that

11

depressive, bipolar, and related disorders, and anxiety and obsessive-compulsive disorders were present but did "not precisely satisfy the diagnosis criteria above." *Id*. at 75, 84, 96, 107). At the initial level, the only evidence the consultants relied on was one psychological assessment. *Id*. at 75, 84. At the reconsideration level, the consultants relied on the psychological assessment, the fact that there was "[l]ittle record of psych issues in file," and the lack of current or past psychological treatment. *Id*. at 97, 108. But, because the state agency psychological consultants' opinion was based on an incomplete review of the medical record, the additional medical records could have affected the state agency consultants' opinions. Notably, the consultants at the reconsideration level highlighted the lack of psychological issues and treatment in Felicia's record. However, Felicia's VNA Health Care mental health treatment records prove the contrary. The mental health records from her treatment with Dr. Gandhiraj and LCSW Lane are examples of psychological treatment that Felicia received and demonstrate her psychological diagnoses and concerns. *Id*. at 383-407. For example, the records include Felicia's diagnoses of anxiety and depression, prescription medication, her feelings of irritability, and her GAF scores. *Id*. At a minimum, the ALJ should have acknowledged that the state agency consultants' opinions were not based on a review of a complete case record and that subsequently obtained mental health evidence from LCSW Lane and Dr. Gandhiraj could cast doubt on the state agency consultants' opinions. Here, errors in the ALJ's review and evidence in the new records cut against finding the records consistent with prior medical evidence and supporting the consultants' determinations.

In response, the Acting Commissioner argues that Felicia offered no opinion from a doctor to support additional RFC limitations. Doc. [21] at 2, 4-5. However, the error at issue is whether the ALJ needed an updated medical opinion before finalizing Felicia's disability determination and then, based on that updated determination, whether Felicia's RFC necessitated additional

12

limitations to be supported by substantial evidence. As a result of the current posture, the cases that the Acting Commissioner relies on are inapposite. *Id*. For example, in *Best v. Berryhill*, the Seventh Circuit explained that the plaintiff did not allege any error concerning limitations for the plaintiff's neck problems because "no doctor's opinion contained in the record indicated greater limitations than those found by the ALJ." 730 F. App'x 380, 382 (7th Cir. 2018) (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). As previously discussed, Felicia supplemented the record to include additional medical evidence contradicting the ALJ's conclusions and reliance on the state agency's psychological consultants' findings. Moreover, before the Court, there is currently no question presented regarding the adequacy of Felicia's RFC. *See* Doc. [16] at 7. While Felicia may ultimately require additional RFC accommodations, the ALJ must first reconsider the new mental health evidence in light of an updated opinion.

The errors the Court has identified are not harmless. Harmless error occurs when "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support" because remanding would be "a waste of time." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). In this case, the ALJ's errors in reviewing the new evidence and lack of an updated opinion allowed the ALJ to find that Felicia could perform medium work without limitations. If the ALJ had obtained a more recent medical opinion to review the evidence postdating the state agency psychological consultants' review, it is possible that the ALJ would have found a more restrictive mental RFC for Felicia, one that would have disqualified her from performing medium work. The GAF scores described above are only one example that could have led to further limitations, s*ee supra* 8-9, and more limiting possibilities were not played out in any hypotheticals to the VE, (R. 66-69). Thus, it is not predictable with great confidence that the

13

agency would reinstate its decision on remand, and the ALJ's error is not harmless.

In sum, the ALJ's opinion is not supported by substantial evidence. Accordingly, on remand, the ALJ must obtain an updated medical opinion as to Felicia's mental RFC limitations, in light of the new and potentially decisive evidence that came after the state agency psychological consultants' review. In doing so, the ALJ must reassess the records submitted after the hearing, reevaluate Felicia's subjective symptoms after obtaining the updated medical opinion, and reconsider the decision in light of the expanded record.

### III. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment [16] is granted and the Acting Commissioner's Motion [21] is denied. This case is remanded to the agency for further proceedings consistent with this opinion.

**SO ORDERED.**
Dated: January 11, 2023

_____
Sunil R. Harjani
United States Magistrate Judge